## Finney's Appeal.

One claiming as a lien creditor, must claim his priority over other creditors, at the time the proceeds of sale of the land are before the court for distribution. If he does not do so, but permits a distribution to be made, and the residue, after the payment of liens on the land, to be decreed to voluntary assignees of the debtor for distribution according to the deed of trust; his claim will then come too late.

Such decree is a final disposition of the whole matter which passes *in rem judicatum*, and being unappealed from, binds him here, no less than it bound him in the court below.

*July* 1. APPEAL by Thomas Finney from the decree of the Court of Common Pleas of Dauphin county, in the matter of the distribution of the money raised by a judicial sale of the real estate of Jacob Miller, so far as relates to the sum of $241 84, paid over by the sheriff, on a decree of the court, to Jacob Zeigler, the surviving assignee of the said Jacob Miller, for distribution under the deed of trust.

It appeared, that on the 25th day of September, 1839, Thomas Finney, the appellant, entered up a judgment against Jacob Miller, to August Term, 1839, No. 190, on a bond with warrant of attorney, and stay of execution until the 16th of September, 1840; and that this judgment was not revived within five years. The three following judgments were also entered against the said Jacob Miller, anterior to the execution of his deed of voluntary assignment. Christian Kintzel *v.* Jacob Miller, of April Term, 1840, No. 163. This judgment was regularly revived; and a *fi. fa.* was issued on the judgment as revived, under which the *defendant's lands* were levied upon and condemned. Thomas Finney *v.* the same, of April Term, 1842, No. 332; Christian Kintzel *v.* the same, of April Term, 1843, No. 259. On this judgment a *fi. fa.* also issued, under which the defendant's lands were levied upon and condemned. It also appeared, that Jacob Miller, by deed of voluntary assignment, dated the 26th day of September, 1843, conveyed all his property to Jacob Zeigler and Henry Gayman, in trust for the benefit of his creditors. Subsequently to this, two other judgments were obtained and entered up against Jacob Miller; upon the latter of which, entered on the 6th of December, 1844, his lands were levied upon and condemned, and on the 7th day of April, 1845, sold by the sheriff, under judicial process, for the sum of $1561 00. On the 10th of December, 1845, Finney issued a *scire facias* to revive his judgment of August Term, 1839, No. 190, and obtained judgment thereon, on the 27th of January, 1845.

On the 29th day of April, 1845, the court appointed an auditor to report the liens entered against Jacob Miller, and make distribution of the money made by a sale of his real estate. The auditor appropriated the greater part of the fund to the payment of the three judgments entered subsequently to that of Finney's, but prior to the execution of the deed of assignment. The balance of the fund, amounting to $241 84, he gave to the assignees of Jacob Miller, to be distributed under the deed of trust. In excluding the judgment of Finney from all participation in this fund, the auditor stated he was of opinion, that as it was not revived within the period of five years, the preference to which it had been entitled, as the first judgment against Jacob Miller, over subsequent judgments, was lost, and that with regard to such judgments, it had ceased to be a lien. On the 25th of September, 1845, the court confirmed the report of the auditor, and decreed, that the sheriff pay over to the assignee of Jacob Miller, immediately, the sum of $241 84. On the 26th of September, 1845, the court appointed the same auditor to distribute the balance of money in the hands of Jacob Zeigler, surviving assignee of Jacob Miller, as appeared on the face of his account, which was confirmed by the court; and also the sum of $241 84, the balance of the proceeds of the sale of the real estate of Jacob Miller, which remained in the hands of the sheriff, after the payment of liens, and which had been paid over to the said assignee, under a decree of the court. The auditor distributed this fund, *pro rata*, amongst the creditors by bond, note, book account, and judgments obtained subsequently to the execution of the deed of trust; amongst which latter was included the judgment of Finney. To this the following exception was filed :—

" The auditor erred in distributing the sum of $241 84, received by Zeigler from Samuel Faunce, Esq., late sheriff of Dauphin county, to and among all the creditors above named, *pro rata*. He ought to have appropriated that sum of $241 84, to the judgment of Thomas Finney *v*. Jacob Miller, in the Court of Common Pleas of Dauphin county, to August Term, 1839, No. 190, revived to January Term, 1845, No. 19, and then given to the said Finney his *pro rata* share with the other creditors, in the sum of $1123 58, the balance decreed to be in the hands of the said Zeigler, as assignee of the said Jacob Miller, as per his account confirmed by the court on the 25th of September, 1845."

The court dismissed the exception, confirmed the report of the auditor, and ordered distribution to be made according to the report. From this decree of the court, Thomas Finney appealed.

The question here was, was it necessary that Finney's judgment, which was a lien upon the real estate of Jacob Miller, at the time he executed the deed of trust, should have been regularly revived, to entitle it to a preference over the creditors by note, bond, book account, and judgments obtained and entered after the execution of the said deed.

The appellant assigned the following error:

The court erred in dismissing the exception to the report of the auditor, and in not appropriating the sum of $241 84, to the judgment of Thomas Finney.

*Adams*, for appellant.—The judgments obtained, after the execution of the deed of trust, were certainly not liens upon the real estate previously assigned. After the execution of the deed of trust, the lands bound by this judgment were in the hands of the law, and in the course of distribution.

This court have said, that the assignee, under a voluntary deed of assignment, "is the debtor's instrument for distribution, and stands in relation to the property, as stood the debtor himself, except that it cannot be seized in his hands on a creditor's execution." Vandyke *v.* Christ, 7 Watts & Serg. 375.

The point involved here has never been decided by this court; but if this property is to be considered in the hands of the law for distribution, then it is virtually decided in favour of the appellant, in the case of the Commonwealth, for the use of Hassinger's administrators, *v.* Gleim and others, 3 Penna. Rep. 417; where it is held, that it is not necessary that a judgment should be revived in order to maintain its lien on money in the sheriff's hands.

In Dohner's assignees the court decided, that in order to continue the lien of a judgment, a service of the *sci. fa.* upon the assignor in possession of the land, was good; and a revival founded upon that service was sufficient to continue the lien, notwithstanding that no service was had upon the assignees, under a voluntary deed of assignment. 1 Barr, 101.

The second ground upon which he contended the appellant was entitled to this money, arose upon the facts in the case, and the rules of law called into action, and applicable to the given state of facts.

The judgment claiming the $241 84 was revived before the sale of the real estate under the *venditioni exponas* issued to April Term, 1845. It was revived on the very day that the sheriff returned his *fi. fa.* with a levy upon the land bound by this judgment. The sale here

made, was on a *fi. fa.* issued to January Term, 1845, No. 46, upon which the lands of the assignor included in the deed to his assignees, were levied upon and condemned.

Then, all that was bound by that judgment, or that was sold under the *venditioni exponas* issued on it, was the resulting trust of the residue belonging to the assignor which the law implies for him, and which, too, was secured to him by the provisions of the deed in this case.

That the assignor has a resulting interest in the land assigned, is recognised in Dohner's assignees before cited, 1 Barr, 101.

And in Shaeffer *v.* Child, it is held, that the proceeds of the sale, by execution of the resulting interest of an insolvent in his assigned estate, under a judgment subsequent to his discharge, go to the judgment that was revived after the execution of the assignment. 7 Watts, 84.

*Rawn* and *Hamilton Alricks,* contrà.—Thomas Finney is not a lien creditor, and has no superior equity to entitle him to payment, in preference to other judgment creditors, or simple contract creditors.

Although, where there is a surplus beyond the liens, the court would not decree the overplus to an insolvent debtor, leaving judgments or admitted claims unpaid; neither would they order it to be paid to one creditor, to the exclusion of all others.

Judgment and simple contract creditors stand on same platform. By the assignment, all property not bound by the judgment, or all property on which lien had expired, passed to the assignee. The claims of lien creditors were paramount and adverse to the assignment. Mr. Finney having suffered his lien to expire, there being no excess in hands of assignee after payment of general creditors, there is no fund bound by his judgment as revived.

If all the creditors were paid but Mr. Finney, the court might order him the money, only because he might not otherwise receive payment from his insolvent debtor. There being no superior equity, from the claim having assumed the shape of a judgment, the creditors all come in equally on the fund for distribution.

3d. If there was a resulting trust, that trust or resulting interest of Jacob Miller was bound by the judgment of David Kirkpatrick & Sons. Theirs was the first judgment after assignment, and, as such, are entitled to fund in hands of assignee. They cited Stevens' Appeal, 5 Watts & Serg. 154; Pamphlet Laws of 1843, p. 273; Pur. Dig. 6 ed.; Fricker's Appeal, 1 Watts, 393; Cathcart *v.* Por

terfield, 5 Watts, 163; Vandyke *v.* Christ, 7 Watts & Serg. 347; Ebright *v.* The Bank, 1 Watts, 397.

*July* 4.   PER CURIAM.—The appellant claims as a lien creditor; and the time to claim his priority, if he had any, (which is doubtful,) was when the proceeds of the land were before the court for distribution.   The decree that the residue, after satisfaction of liens, should be paid over to the debtor's voluntary assignees for distribution, according to the provisions of the deed of trust, was a final disposition of the whole matter which passed *in rem judicatam,* and being unappealed from, binds him here no less than it bound him there.                               Decree affirmed.